```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

BLUE ANGEL FILMS LTD. and
MIROMAR ENTERTAINMENT AG

                Plaintiffs,

        -against-                       08 Civ. 6469(DAB)
                                            ECF Case

FIRST LOOK STUDIOS, INC.,

                Defendant.
-------------------------------x
```

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT ATTORNEYS' MOTION TO WITHDRAW AND IN SUPPORT OF THE PLAINTIFFS' CROSS MOTION FOR THE ENTRY OF A <u>NON FINAL JUDGMENT AND OTHER RELIEF</u>**

```
                        Gregory A. Sioris
                        Attorney for Plaintiffs
                        303 Fifth Avenue
                        New York, NY 10016-6644
                           (212)840-2644
```

**TABLE OF CONTENTS**

Preliminary Statement……………………………………………………………………………………………5

I.   THE COURT SHOULD DENY COUNSEL'S MOTION TO WITHDRAW

a)   The Disruption and Delay That Withdrawal of Counsel Will Create is a Material Consideration That Weighs Against a Permissive Withdrawal……………………………………………………………………………….9

II.   THE COURT SHOULD ENTER A NON FINAL JUDGMENT IN THE SUM CERTAIN AMOUNT OF $212,500.00………………………………………………………………14

III.   SHOULD THE COURT DECLINE TO ENTER A NON FINAL JUDGMENT AN ORDER OF ATTACHMENT UNDER ARTICLE 62 OF THE CPLR AGAINST THE DEFENDANT SHOULD BE ENTERED………………………………………………………………17

IV.   DEFENDANT SHOULD BE HELD IN CONTEMPT FOR ITS FAILURE TO ABIDE WITH THE DISCOVERY ORDER…………………………………………………………19

Conclusion………………………………………………………………………………………………………..19

**TABLE OF AUTHORITIES**

Asset Management Assoc. of New York, Inc. v. Emerson Telecommunication Products LLC,
2010 U.S. App. LEXIS 20589 (2nd Cir. 2010)……………………………………………………..17

Bank of China, New York Branch v. NBM L.L.C,
192 F.Supp.2d 183, 186 (S.D.N.Y. 2002),
vacated on other grounds, 359 F.3d 191 (2nd Cir. 2004)………………………..15

Beshansky v. First Nat'l Entertainment Corp.,
140 F.R.D. 272 (S.D.N.Y. 1990)…………………………………………………………………………13

Brown v. National Survival Games, Inc.,
1994 U.S. Dist. LEXIS 16572, 1994 WL 660533 (N.D.N.Y. 1994)…………11

Chemical. Bank v. Haseotes,
13 F.3d 569 (2d Cir. 1994)……………………………………………………………………………..14

Emile v. Browner,
1996 U.S. Dist. LEXIS 18654 (S.D.N.Y. 1996)……………………………………………13

Fletcher v. Atex, Inc.,
68 F.3d 1451 (2nd Cir. 1995)…………………………………………………………………17, 18

JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 306 F. Supp.2d 482 (S.D.N.Y. 2004)……………………………15, 16

Malarkey v. Texaco, Inc.,
1989 U.S. Dist. LEXIS 8764, 1989 WL 88709 (S.D.N.Y. 1989)………………11

Mario Valente Collezioni, Ltd. v. Semeraro,
2004 U.S. Dist. LEXIS 8274 (S.D.N.Y. 2004)………………………………………………13

Musket Corp. v. PDVSA Petroleo, S.A.,
512 F.Supp.2d 155 (S.D.N.Y. 2007)…………………………………………………………………15

NetJets Aviation, Inc. v. LHC Communications, Inc.,
537 F.3d 168 (2nd Cir. 2008)……………………………………………………………………………18

Oscar de la Renta, Ltd. v. Strelitz, Ltd.,
1993 U.S. Dist. LEXIS 7572 (S.D.N.Y. 1993)……………………………………………13

Rophaiel v. Alken Murray Corp.,
1996 U.S. Dist. LEXIS 7796, 1996 WL 306457, (S.D.N.Y. 1996)………..11

Software Freedom Conservancy, Inc. v. Andersen,
2010 U.S. Dist. LEXIS 125426 (S.D.N.Y. 2010)……………………………………………18

**TABLE OF AUTHORITIES**

Team Obsolete Ltd. v. A.H.R.M.A., Ltd.,
464 F. Supp. 2d 164 (E.D.N.Y. 2006)..................................................................................12

Whiting v. Lacara,
187 F.3d 317 (2nd Cir. 1999)...........................................................................................10,11


**Statutes**

FRCP 15

FRCP 64

CPLR Article 62

Unified Fraud Transfer Act (UFTA),
Delaware Annotated Code, Title 6, §1301 *et. seq.* (2005)

**PRELIMINARY STATEMENT**

The motion by the defendant's counsel to withdraw at this late hour in the proceedings should be denied since it will effectively stall this suit.  This motion is merely a ploy by defendant First Look Studios, Inc. (FLS) and/or its purported successor Millennium Entertainment LLC (Millennium) and those connected to these entities to avoid having to face judgment, FLS having already been found in breach of the parties' motion picture distribution agreement by Judge Batts.  Despite being in breach, FLS continues to sell the plaintiffs' motion picture without paying or accounting to plaintiffs since its acquisition of the picture in 2008.  Save for outstanding discovery that was Ordered to be produced by December 17, 2010, this case is ready for inquest.  Predictably, FLS failed to produce the discovery and did not move to stay the November 10, 2010 Order, and is now in contempt for its willful failure to comply with the Order.

Defendant's lawyer Charles M. Coate, Esq., claims in his moving papers that his client simply closed its shutters and gone out of business, avoiding discussion of the obvious issue of whether this purported closing was motivated by legitimate business considerations or is a fraud upon its creditors such as the plaintiffs and other motion picture producers to which it is indebted, or whether a *de facto* merger occurred with FLS' purported successor.  The motion's timing however strongly

5

suggests that it has been filed to frustrate creditors, with media reports claiming that 20 motion picture companies are in pursuit of FLS seeking payment for its acquisition of their pictures. There is no declaration from anyone connected to the FLS to explain why it allegedly ceased operating, how it intends to appear at inquest, or how it intends to satisfy its debts.  There is also no discussion of whether FLS, a Delaware corporation, followed Delaware law as regards a winding down, counsel simply claiming that there has been an alleged "assignment for the benefit of creditors" yet has not filed a corporate resolution or other papers to support this purported organic change.  Perhaps indicative of defendant and its counsel's state of mind is that although its counsel seeks to exit this proceeding, defendant intends to keep distributing and exploiting the plaintiffs' motion picture without paying for these rights or returning the picture's physical properties to the plaintiffs.

   Based on these facts counsel's motion to withdraw should be denied and plaintiffs' cross motion for the entry of a non final judgment and other relief as recited in their notice of cross motion dated January 4, 2011 should be granted in order that plaintiffs may be made whole.

## BACKGROUND

The Court is well aware of Judge Batts' Order entered on September 29, 2010 which finds defendant in breach of the parties' motion picture distribution agreement, the Order finding on page three that defendant failed to pay plaintiff $212,500.00 from the $250,000.00 advance and the royalties due under the agreement.  A copy of the Order is plaintiff's exhibit A.

On December 17, 2010 a motion to uphold a final arbitration award dated October 11, 2010 against FLS for approximately $2,000,000.00 FLS was filed in a separate action in the Superior Court of Los Angeles, under the caption *Landshark LLC, A New York Corporation v. First Look Studios, Inc. a Delaware Corporation*, see plaintiff's exhibit C.

The award shows that Mr. Coate represents FLS in Landshark's Los Angeles action.  The facts recited in the award mirror those in this case, namely that FLS entered into a motion picture distribution agreement with producer Landshark LLC to exploit the motion picture *August* in February, 2008, the same month FLS entered into its agreement with the plaintiff.  Similar to Judge Batts' ruling the award also finds FLS breached its distribution agreement by distributing the picture but not surprisingly failing to pay Landshark monies due under the agreement, with the various damages, legal fees and costs totaling approximately 2,000,000.00.

Highly relevant to this suit is the arbitrator's finding at page 5 of the award that FLS lost $150 million and $103 million in 2006 and 2007 respectively and was insolvent for all practical purposes in 2008.  The arbitrator also found that as of July 3, 2008 "FLS had current overdue payables (minimum guarantees) in the amount of $3,753,350, unpaid and due participation and other payouts of $2,137,785, and other overdue trade payables of $4,096,085 for a total of $9,987,220…The existence of substantial overdue minimum guarantee payments on July 3, 2008 and thereafter supports the inference that in mid-2008 FLS was acquiring films for which it had no capacity to pay", exhibit C.

At pages 9-11 of the award the arbitrator found that FLS acted fraudulently in the acquisition of Landshark's motion picture.  Simply put, FLS has never intended to pay Landshark, the plaintiffs herein and the other producers whose pictures it acquired.  The arbitrator awarded Landshark punitive damages of $462,500.00 based on its fraud, plaintiff's exhibit C, at p. 13.

In addition to the Los Angeles action a recent report by Deadline London (www.deadline.com) dated December 22, 2010 claims that FLS "is being sued by around 20 other film companies" and speaks of a British company which secured a judgment against FLS, plaintiffs' exhibit F.  The article quotes Avi Lerner, allegedly a principle of Millennium and Nu Image, Inc. which control FLS

8

"They've got a judgment against a company that doesn't exist, so who cares?", plaintiffs' exhibit F.

I. **THE COURT SHOULD DENY COUNSEL'S MOTION TO WITHDRAW**

**a) The Disruption and Delay That Withdrawal of Counsel Will Create is a Material Consideration That Weighs Against a Permissive Withdrawal**

Defendant is represented by two lawyers. William Horner, Esq., the attorney of record, is located in Manhattan and Charles M. Coate, Esq. of the firm of Costa, Abrams & Coate, LLP in Santa Monica, CA. Mr. Horner has not submitted a declaration seeking to withdraw as per Local Rule 1.4 there being no issue of him remaining.

The motion is supported by the declaration of Charles M. Coate, Esq. dated December 8, 2010. On October 12, 2010 Mr. Coate filed a motion seeking attorney's fees and costs on defendant's behalf claiming defendant is the prevailing party in this suit. Plaintiffs opposed this frivolous claim and crossed moved seeking sanctions under Rule 11 or alternatively under 28 U.S.C. §1927 since the defendant's motion lacks a foundation in law. Mr. Coate's instant moving declaration, dated December 8, 2010, fails to address, let alone explain, why he should be allowed to continue to represent defendant as regards its fee shifting motion, but should be allowed to withdraw on the eve of the

9

inquest after defendant has shown contempt of this Court's Order to produce discovery.

An attorney's withdrawal is a matter of the court's discretion and Mr. Coate fails to provide good cause justifying withdrawal, see <u>Whiting v. Lacara</u>, 187 F.3d 317, 320-321 (2nd Cir. 1999).  In view of the serious claims raised against FLS by the plaintiffs and other producers, it appears that FLS enters into agreements to distribute motion pictures without having the resources to pay for their acquisition, but nonetheless distributes the pictures and fails to pay producers the sums due under these agreements.  These activities provide a sound basis to support a claim of enterprise and shareholder fraud, since it is perhaps obvious that FLS has supposedly closed its doors based on the fact that an inquest leading to a judgment will soon occur in this suit, and other judgments will likely follow from other claimants such as Landshark.

These facts should weigh heavily against granting Mr. Coate's withdrawal motion, since he seeks to leave this action so as to assist his client in its dubious endeavors by trying to undermine any contact that plaintiffs may have with FLS, which similar to Mr. Coate, is located in Los Angeles.

The alleged basis for withdrawal, primarily non payment, is not sound at this very late stage in the proceedings.  Mr. Coate ignores the case's "position on the calendar" as called for in the

10

local rule, and avoids any mention of the imminent inquest. Whiting at pages 320-321 counsels that courts when determining whether to grant a motion to withdraw "have typically considered whether 'the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel'" (quoting *Brown v. National Survival Games, Inc., 1994 U.S. Dist. LEXIS 16572*, 1994 WL 660533, at * 3 (N.D.N.Y. 1994).  Mr. Coate fails to address the certain disruption that will arise in the event of his withdrawal since he has been defendant's primary counsel, the docket sheet reflecting his involvement with all aspects of this case and in particular FLS' cross motion for dismissal and its motion seeking attorney's fees.  Where an attorney moves to withdraw on the eve of trial, courts generally deny such a motion.  See *Malarkey v. Texaco, Inc., 1989 U.S. Dist. LEXIS 8764, 1989 WL 88709*, at *2 (S.D.N.Y. 1989).  By analogy, this logic should apply to an inquest.

   Whiting at page 321 endorses the denial of a withdrawal "when [the] case is on the verge of trial readiness" and cites *Rophaiel v. Alken Murray Corp., 1996 U.S. Dist. LEXIS 7796*, No. 94 Civ. 9064, 1996 WL 306457, at *2 (S.D.N.Y. June 7, 1996) "(denying motion to withdraw and noting concern with litigation delay because it would be 'too easy for a defendant to stall proceedings by inducing the withdrawal of its attorney by non-payment of fees')".  The claim of non payment is clearly being used "to stall proceedings".

The claim that the defendant has ceased operations and lacks staff is directly contradicted by the statements contained on the Internet web page of Millennium Entertainment LLC (Millennium), FLS' purported successor, attached as an exhibit to Mr. Coate's December 8 declaration.  Mr. Coate adopts the web page's language which says Millennium "has acquired substantially all of the assets of First Look Studios, Inc. from the senior secured creditors of First Look Studios…" and "has also successfully employed many of the key former management and staff of First Look Studios".  Nowhere is there a claim that FLS has dissolved or has sought bankruptcy protection.  Indeed his declaration speaks of his dealings with a Phillip Gasteier, Esq., counsel at Millennium, showing that he does have access to its representatives who are controlling the fate of the plaintiffs' picture.  Since representatives of the defendant are employed by and can be found in the successor entity counsel's allegation that defendant's personnel have gone is highly dubious as contradicted by the statements made in his declaration.

In making its decision the Court may also examine likely prejudice to the client, whether the motion is opposed, and whether the unpaid representation has become a severe financial hardship to the firm, <u>Team Obsolete Ltd. v. A.H.R.M.A., Ltd.</u>, 464 F. Supp. 2d 164 at 166-67 (E.D.N.Y. 2006).  The failure to receive payment allegedly in this suit does not conclusively support

withdrawal particularly since Mr. Coate is obviously representing FLS in the Los Angeles suit connected to the arbitration award and likely has received and receives income from FLS or those connected to it to defend against the entry of a nearly $2,000,000.00 judgment based on the final arbitration award. Nowhere does he claim that either he or his firm will suffer "a severe financial hardship" as regards representing the defendant particularly since he is involved in its defense in the Landshark action against FLS.

Finally, a court may establish conditions before permitting withdrawal since "the court is unwilling to relieve counsel without ensuring that defendants are represented during the process for entry of a judgment", Mario Valente Collezioni, Ltd. v. Semeraro, 2004 U.S. Dist. LEXIS 8274 at *3 (S.D.N.Y. 2004) (citing *Oscar de la Renta, Ltd. v. Strelitz, Ltd., 1993 U.S. Dist. LEXIS 7572, at *1, (S.D.N.Y. 1993)); Beshansky v. First Nat'l Entertainment Corp., 140 F.R.D. 272, 274 (S.D.N.Y. 1990)*. Courts have conditioned withdrawal on attorneys completing certain stages of the litigation, such as entering into a final judgment in the other party's favor.  See also Emile v. Browner, 1996 U.S. Dist. LEXIS 18654, at *5 (S.D.N.Y. 1996); Beshansky, supra.  In the event that the Court grants this motion it should require FLS, its purported successor and/or Mr. Coate to post a bond of at least one million dollars ($1,000,000.00) in order for plaintiffs to be

13

assured a recovery for FLS' adjudged breach and that all of plaintiffs' motion picture materials are returned to them.

    II.    **THE COURT SHOULD ENTER A NON FINAL JUDGMENT IN THE SUM CERTAIN AMOUNT OF $212,500.00**

As recited on page 3 of Judge Batts' Order, FLS failed to pay $212,500.00, or the balance of the $250,000.00 advance for it to receive the rights to exploit the plaintiffs' motion picture.  The sum certain of $212,500.00 has been summarily determined in the plaintiffs' favor and the Court should enter a non final judgment for this amount together with interest from June 26, 2008 the date of the breach, with the additional sums due to be determined at the inquest.

    III.    **SHOULD THE COURT DECLINE TO ENTER A NON FINAL JUDGMENT AN ORDER OF ATTACHMENT UNDER ARTICLE 62 OF THE CPLR AGAINST THE DEFENDANT SHOULD BE ENTERED**

In the alternative to granting a non final judgment, plaintiffs move for an Order of attachment of at least $212,500.00 since their damages which likely will exceed $1,000,000.00 as explained in the accompanying declaration of Oliver Mahrdt. Pursuant to FRCP 64 the remedy of attachment is governed by the law of the state in which a district court sits, <u>Chemical. Bank v. Haseotes</u>, 13 F.3d 569, 572 (2d Cir. 1994).  Under CPLR §6223, ". . . a plaintiff bears the burden of establishing the grounds for the

14

attachment, the need for continuing the levy, and the probability of success on the merits.", Bank of China, New York Branch v. NBM L.L.C, 192 F.Supp.2d 183, 186 (S.D.N.Y. 2002), judgment vacated on other grounds, 359 F.3d 191 (2nd Cir. 2004) (citing C.P.L.R. §§ 6201, 6212, 6223).  "Probability of success on the merits for purposes of an order of attachment requires that the moving party demonstrate that it is more likely than not that it will succeed on its claims and must show proof stronger than that required to make a prima facie case", Musket Corp. v. PDVSA Petroleo, S.A., 512 F.Supp.2d 155, 160 (S.D.N.Y. 2007).  In deciding whether this burden has been met, "all legitimate inferences should be drawn in favor of the party seeking attachment", JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 306 F. Supp.2d 482, 485 (S.D.N.Y. 2004).

Pursuant to CPLR 6201(3), a plaintiff can establish entitlement to an attachment by showing that "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts."

An analysis under CPLR 6201 shows that defendant is a Delaware corporation as seen in plaintiffs' exhibit D, a print out from the Internet web site of the Delaware Secretary of State proving defendant's incorporation in Delaware.  In addition,

15

plaintiffs have proven that (1) they have stated a claim for a money judgment, as proven by Judge Batts' Order entered on September 29, 2010; (2) have established a probability of success on the merits as per Judge Batts' Order since an inquest has been Ordered; (3) that defendant has made "an assignment for the benefit of creditors" as confirmed by its counsel providing clear and convincing evidence that it has acted "with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts" (quoting from CPLR 6201(3)) and (4) "the amount demanded from the defendant is greater than the amount of all counterclaims known to the party seeking attachment" there being no counterclaims asserted, <u>JSC Foreign Econ. Ass'n Technostroyexport</u>, 306 F. Supp.2d at 485.

   Based on these facts it is proper for the Court to issue an Order of attachment for at least the $212,500.00 that Judge Batts found that defendant owes on the advance, if not $1,000,000.00 as explained in the accompanying declaration of Oliver Mahrdt.  Since the facts weigh very heavily, if not conclusively, in the plaintiffs' favor, the court should exercise its discretion and maintain any bond or undertaking made pursuant to CPLR §6212(b) at the statutory minimum of $500.00.

16

### III. **PLAINTIFF SHOULD BE ALLOWED TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FRCP 15**

"Rule 15 of the Federal Rules of Civil Procedure provides that '[t]he court should freely give leave [to amend] when justice so requires'. Fed. R. Civ. P. 15(a)(2)", Asset Management Assoc. of New York, Inc. v. Emerson Telecommunication Products LLC, 2010 U.S. App. LEXIS 20589 *2 (2nd Cir. 2010).

Attached as plaintiffs exhibit G is a proposed Second Amended Complaint dated December 30, 2010.  As seen in this proposed complaint, plaintiffs seek to add claims against the defendant and its shareholders or others acting for it for deceit and fraud, to pierce the defendant's corporate veil based on theories of agency and/or alter ego and control and to name two individuals and other entities which they created or control as co-conspirators to commit fraud against the plaintiffs.  In addition, plaintiffs seek rescission of the parties' distribution agreement based on a material breach of the agreement and for a turn over Order for the return of plaintiffs' properties as connected to the subject motion picture.

"Under New York choice of law principles, 'the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders'", Fletcher v. Atex, Inc., 68 F.3d 1451 at 1457 (2nd Cir. 1995). Since FLS is a Delaware corporation, Delaware law applies to

17

pierce the corporate veil.  Fletcher counsels "Thus, under an alter ego theory, there is no requirement of a showing of fraud. *Id.* at 1085.  To prevail on an alter ego claim under Delaware law, a plaintiff must show (1) that the parent and the subsidiary "operated as a single economic entity" and (2) that an "overall element of injustice or unfairness . . . [is] present."  See also NetJets Aviation, Inc. v. LHC Communications, Inc., 537 F.3d 168, 183 (2nd Cir. 2008).

In addition plaintiff seeks to add claims under Delaware's Unified Fraud Transfer Act (UFTA), Delaware Annotated Code, Title 6, §1301 *et. seq.* (2005) as regards the purported transfer of the plaintiffs' picture based on a purported "assignment for the benefit of creditors" as claimed by Mr. Coate.  With FLS having breached its agreement with plaintiffs and never paying or accounting regarding the picture's income the plaintiffs object to any "assignment" of their rights in the agreement and/or the picture.

Finally, the recent Southern District case of Software Freedom Conservancy, Inc. v. Andersen, 2010 U.S. Dist. LEXIS 125426 (S.D.N.Y. 2010), Scheindlin, J., discusses Rule 25(c) as regards an assignment for the benefit of creditors under California law regarding a Delaware corporation.  At pages *26-27 of the opinion Judge Scheindlin rules "plaintiffs may add the alleged continuing [copyright] infringers to this action as direct

18

defendants", which provides the plaintiffs with a sound basis to name additional individual defendants in the second amended complaint for their likely infringement of the plaintiffs' copyright in the motion picture.

### IV. DEFENDANT SHOULD BE HELD IN CONTEMPT FOR ITS FAILURE TO ABIDE WITH THE DISCOVERY ORDER

Pursuant to the Order of this Court entered on November 10, 2010, Francis, M.J., the defendant was to have provided discovery by December 17, 2010, plaintiffs' exhibit B. The defendant failed to provide any discovery pursuant to the Order, see Sioris declaration at ¶2. The defendant has ignored the Court's Order and plaintiffs cross move to hold it in contempt, with appropriate sanctions to be imposed at the discretion of the Court.

### Conclusion

For the reasons stated herein, the Court has good cause to deny the defendant counsel's motion and to grant the relief being sought in the plaintiffs' cross motion.

Respectfully submitted,

Dated: New York, NY
　　　January 4, 2011          s/Gregory A. Sioris
　　　　　　　　　　　　　　　Attorney for Plaintiffs
　　　　　　　　　　　　　　　303 Fifth Avenue, Suite 506
　　　　　　　　　　　　　　　New York, NY 10016-6644
　　　　　　　　　　　　　　　(212)840-2644